UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| MICHAEL COLEMAN<br><br>　　　Plaintiff,<br><br>vs.<br><br>MONTE CARLO,<br><br>　　　Defendant. | Case No.: 2:14-cv-1614-JAD-VCF<br><br>**Order**<br>(Docs. 2, 3, 7) |

　　　Defendant Victoria Partners, which operates the Monte Carlo Resort and Casino in Las Vegas, Nevada, moves to dismiss two of the three civil rights claims brought against it by pro se plaintiff Michael Coleman, who used to work at the Monte Carlo as a security guard.[1] Coleman sued Victoria Partners[2] after he was fired for sleeping on the job, an allegation Coleman disputes.[3] He claims the real reason he was fired was "because of his race being African American."[4]

　　　Initially, Coleman sued Victoria Partners under state law.[5] When that complaint was dismissed for lack of subject-matter jurisdiction, Coleman amended his complaint and alleged what appear to be three separate federal claims: (1) retaliation under Title VII, (2) racial discrimination under Title VII, and (3) racial discrimination under 42 U.S.C. § 1981.[6] This amended complaint, unlike Coleman's first complaint, survived initial screening under 28 USC § 1951(e).[7]

---

[1] *See* Doc. 7.

[2] Coleman erroneously sued "Monte Carlo." But Victoria Partners clarified that it is the proper defendant. *See id.* at 1.

[3] *See* Doc. 9 at 3.

[4] *Id.*

[5] *See* Docs. 2, 3.

[6] *See* Doc. 4 at 3–4.

[7] *See* Doc. 5.

To the extent that Coleman has pled a retaliation claim, that claim will now be dismissed. Coleman failed to timely exhaust the administrative process for his retaliation claim. In addition, his complaint is devoid of any facts to support a finding that he was fired from the Monte Carlo because he either objected to an unlawful employment practice or participated in an investigation into an unlawful employment practice.[8] The absence of this evidence prevents him from proving his retaliation claim as a mater of law.

Coleman's two race-discrimination claims, however, survive. His race-discrimination claim under Title VII survives because Victoria Partners has not challenged it.[9] And his race-discrimination claim under § 1981 survives because Coleman alleges that when a Caucasian employee was caught sleeping on the job, she was only suspended; she wasn't fired. If true, this kind of circumstantial evidence of disparate treatment is enough to defeat Victoria Partners' 12(b)(6) challenge at this early stage of litigation.

I therefore grant Victoria Partners' motion in part and deny it in part. I grant it as to Coleman's retaliation claim, but I deny it as to his race-discrimination claim under § 1981. That claim, like Coleman's race-discrimination claim under Title VII, survives.

## Background[10]

Plaintiff Michael Coleman, an African-American male, began working as a security guard at the Monte Carlo in May 2000.[11] He claims he always "performed his job duties and responsibilities with excellence."[12] But on December 4, 2013, Coleman was told that cameras caught him sleeping

---

[8] *See* 42 U.S.C. § 2000e-3(a) (identifying what is required to fulfill the "opposition" requirement and the "participation" requirement of a retaliation claim).

[9] *See* Doc. 7 ("Defendant respectfully requests this Court dismiss [Coleman's] First Claim for retaliation and limit the claim to race discrimination [under Title VII].").

[10] For the purposes of this motion to dismiss, I assume all the facts Coleman alleges in his complaint are true. This background section is not intended as any finding of fact.

[11] *See* Doc. 4 at 2.

[12] *Id.*

on the job.[13] Coleman fully cooperated with the ensuing investigation of the incident and remains adamant that he was not sleeping.[14] Nevertheless, he was fired about two weeks later.[15]

Coleman claims the real reason he was fired was his race. He supports this claim with the assertion that another employee—a Caucasian female—was not fired after she was caught sleeping on the job in November 2013. Instead, she was merely suspended.[16]

A month after being fired, Coleman filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC).[17] In the section of the complaint form that requested Coleman specify the basis for his claim, he selected the box marked "RACE." There is a separate box marked "RETALIATION," and the form allows claimants to check multiple boxes. But Coleman only checked "RACE."

Victoria Partners notes this omission in its motion dismiss Coleman's claim and argues that Coleman's retaliation claim therefore fails because he did not exhaust the administrative-claims process.[18] It also argues that Coleman's race-discrimination claim under § 1981 fails because his amended complaint is "devoid of any allegations of intentional discrimination"[19] and amounts to "nothing more than a 'formulaic recitation of the elements' of a constitutional discrimination claim."[20] According to Victoria Partners, this case should be limited to Coleman's race-discrimination claim under Title VII.

Coleman addresses these arguments in a very limited way in his response, which at times

---

[13] *Id.*

[14] *Id.*

[15] *Id.*

[16] *Id.* at 3.

[17] *Id.*

[18] *See* Doc. 7 at 8.

[19] *Id.*

[20] *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 550 (2007)).

confuses motion-to-dismiss standards with those that govern motions for summary judgment.[21] Mostly, he maintains that he was not sleeping on the job and that, by firing him, Victoria Partners treated him more harshly than it treated a Caucasian employee in a similar position.[22]

Coleman's original complaint was screened by Magistrate Judge Cam Ferenbach.[23] Because it was based on a theory that Victoria Partners had violated Nevada state law, Judge Ferenbach recommended dismissal of the complaint for lack of subject-matter jurisdiction.[24] Coleman's amended complaint was also screened by Judge Ferenbach. This time he found that, "for purposes of screening, [Coleman] states a claim for relief."[25] The difference was that Coleman had now asserted a theory of racial discrimination and sufficiently alleged that he had been treated differently by the Monte Carlo than had a Caucasian employee.[26]

## Discussion

Federal Rule of Civil Procedure 8 requires every complaint to contain "[a] short and plain statement of the claim showing that the pleader is entitled to relief."[27] While Rule 8 does not require detailed factual allegations, the properly pled claim must contain enough facts to "state a claim to relief that is plausible on its face."[28] This "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"; the facts alleged must raise the claim "above the

---

[21] *See e.g.*, Doc. 9 at 2–3 (describing the standard for a motion for summary judgment even though the current motion is a motion to dismiss).

[22] *See id.* at 8.

[23] *See* Doc. 5.

[24] *See* Doc. 2.

[25] *See* Doc. 5 at 3.

[26] *See id.* at 2–3.

[27] Fed. R. Civ. P. 8(a)(2); *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

[28] *Twombly*, 550 U.S. at 570.

speculative level."[29] In other words, a complaint must make direct or inferential allegations about "all the material elements necessary to sustain recovery under *some* viable legal theory."[30]

District courts employ a two-step approach when evaluating a complaint's sufficiency on a Rule 12(b)(6) motion to dismiss. First, the court must accept as true all well-pled factual allegations in the complaint, recognizing that legal conclusions are not entitled to an assumption of truth.[31] Mere recitals of a claim's elements, supported only by conclusory statements, are insufficient.[32] Second, the court must consider whether the well-pled factual allegations state a plausible claim for relief.[33] A claim is facially plausible when the complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct.[34] A complaint that does not permit the court to infer more than the mere possibility of misconduct has "alleged—but not shown—that the pleader is entitled to relief," and it must be dismissed.[35]

### I. Coleman's Original Complaint is Dismissed for Lack of Subject-Matter Jurisdiction.

Under 28 U.S.C. § 636(b)(1)(B), magistrate judges may "conduct hearings" and submit "proposed findings of fact and recommendations for the disposition" to district judges. Section 636(b) further prescribes de novo review of these findings and recommendations by the district judge. Local Rule IB 3-2(b), however, requires de novo consideration of specific objections only. The standard of review for unobjected-to portions of the report and recommendation is left to the district judge's discretion.

After evaluating Coleman's original complaint, Judge Ferenbach recommended its dismissal

---

[29] *Iqbal*, 556 U.S. at 678.

[30] *Twombly*, 550 U.S. at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1989)) (emphasis in original).

[31] *Iqbal*, 556 U.S. at 678–79.

[32] *Id.*

[33] *Id* at 679.

[34] *Id.*

[35] *Twombly*, 550 U.S. at 570.

based on lack of subject-matter jurisdiction: Coleman had asserted a state claim but no federal claim, so his complaint triggered nothing to trigger this court's power to hear the case. Coleman did not object to Judge Ferenbach's report and recommendation. Instead, Coleman amended his complaint to assert federal claims. Having reviewed Judge Ferenbach's recommendation, I agree with his analysis, adopt his finding and conclusions, and dismiss Coleman's original complaint. I now proceed to consider Victoria Partners' motion to dismiss the claims in Coleman's amended complaint.

II.  Coleman's Retaliation Claim Fails Both Because He Failed to Timely Exhaust His Administrative Remedies and Because He Has Failed to Satisfy the Pleading Requirements of *Iqbal* and *Twombly*.

Twice in his amended complaint Coleman uses the word "retaliation": once in the heading to his first claim of relief—"Discrimination and Retaliation of Title VII and the Civil Rights Act of 1991—and then again in body of his second claim of relief when he alleges that "Defendant's conduct, retaliation set forth herein was engaged in purposefully and intentionally and violated of 42 U.S.C. Section 1981."[36] To the extent that Coleman intends to assert a retaliation claim, I evaluate it here.

A plaintiff must exhaust his administrative remedies with the EEOC before pursuing an employment-discrimination claim in federal court.[37] "Although failure to file an EEOC complaint is not a complete bar to district court jurisdiction, substantial compliance with the exhaustion requirement is a jurisdictional pre-requisite."[38] All of the specific claims made in district court ordinarily must be first presented to the EEOC, so "the jurisdictional scope of the plaintiff's court action depends on the scope of the EEOC charge and investigation."[39] Generally, this means that every theory must be specifically raised before the EEOC. But the court also has jurisdiction over

---

[36] Doc. 4 at 4.

[37] 29 U.S.C. § 626(d).

[38] *Leong v. Potter*, 347 F.3d 1117, 1122 (9th Cir. 2003).

[39] *Leong*, 347 F.3d at 1122 (citing *EEOC v. Farmer Bros. Co.*, 31 F.3d 891, 899 (9th Cir. 1994); *Sosa v. Hiraoka*, 920 F.2d 1451, 1456 (9th Cir. 1990)).

missed claims that are "like or reasonably related to" the charges presented to the EEOC or that fall "within the scope of an EEOC investigation that reasonably could [have been] expected to grow out of the allegations" made to the EEOC.[40] The charges must be construed with the "utmost liberality" in the plaintiff's favor.[41]

Coleman's EEOC charge, construed with the utmost liberality in his favor, does not encompass his retaliation claim. "The crucial element of a charge is the factual statement."[42] Coleman's factual statement only included a claim of racial discrimination. It did not include a claim of retaliation. He wrote on his EEOC form: "I believe I have been discriminated against because of my race (Black) in violation of [Title VII]."[43] He did not mention anything about retaliation. Nor did he check the "RETALIATION" box when prompted by the form to identify the basis of his allegation. All he checked was "RACE," even though the form allowed him to check multiple boxes.

I cannot conclude that Coleman's retaliation claim is like or reasonably related to his EEOC charge or within the scope of the investigation that reasonably could have been expected to grow out of the EEOC investigation of his race-based allegations. The two claims involve markedly different kinds of allegedly improper conduct, policies, practices, and motivations; one does not beget the other. Likely, the EEOC investigation would have been different with the addition of the retaliation allegation because the EEOC would have examined whether Coleman had ever, for example, been punished for speaking out at work against an unlawful employment practice or for participating in EEOC investigation—information that would not have been gathered during an investigation of

---

[40] *Id.* (internal quotation marks omitted) (citing *Sosa*, 920 F.2d at 1456).

[41] *Sosa*, 920 F.2d at 1458 (internal quotation marks omitted).

[42] *B.K.B. v. Maine Police Dep't*, 276 F.3d 1091, 1100 (9th Cir. 2002) (quotations omitted).

[43] *See* Doc. 7 at 13. Without converting a motion to dismiss to a motion for summary judgment, a court may consider "documents in situations where the complaint necessarily relies upon a document or the contents of the document are alleged in a complaint, the document's authenticity is not in question, and there are no disputed issues as to the document's relevance." *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010).

Coleman's racial-discrimination charge.[44] To find Coleman's retaliation claim exhausted by his thinly pled racial discrimination charge before the EEOC would effectively ignore the exhaustion requirement altogether.[45] Because Coleman failed to exhaust the administrative-claim process for his retaliation claim, this court lacks jurisdiction to hear it.

Moreover, Coleman has not alleged any facts to suggest that he has engaged in any protected activity under the opposition clause or the participation clause of 42 U.S.C. § 2000e-3(a), which outlines the acts an employer is prohibited from retaliating against. The opposition clause prohibits an employer from retaliating against an employee who "has opposed any practice made unlawful in this subchapter," and the participation clause prohibits an employer from retaliating against an employee who "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."[46] Merely participating in an in-house proceeding, as Coleman did when he cooperated with Monte Carlo's internal investigation into the sleeping incident, is not enough.[47] He would have had to file a formal charge before the alleged retaliatory act, which in this case was being fired.

But Coleman filed his formal charge after he was fired.[48] And nowhere in his complaint does he allege facts that would allow me to infer that he in some other way opposed an unlawful employment practice on the part of the Monte Carlo. Simply pleading "retaliation," without any supporting facts, is insufficient under *Iqbal* and *Twombly*. Accordingly, I dismiss Coleman's retaliation claim.

---

[44]*Id.* at 6.

[45]*Id.*

[46] 42 U.S.C. § 2000e-3(a).

[47] *EEOC v. Total Sys. Servs.*, 221 F.3d 1171, 1174 (11th Cir. 2000) (explaining that what is protected are "proceedings and activities which occur in conjunction with or after the filing of a formal charge with the EEOC; it does not include participating in an employer's internal, in-house investigation, conducted apart from a formal charge with the EEOC").

[48] According to this complaint, Coleman was fired on December 16, 2014. Doc. 4 at 3. He filed his formal charge a month later. *See* Doc. 7 at 13.

### III. Coleman's § 1981 Claim Survives Because There is Circumstantial Evidence That Coleman's Termination Was Based on Discriminatory Intent.

Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts." It is an equal protection provision. And "[i]n the equal protection context, just as in a Title VII disparate treatment case, discriminatory intent need not be proved by direct evidence."[49] Instead, "determining the existence of a discriminatory purpose demands a sensitive inquiry into such circumstantial and direct evidence of intent as may be available."[50]

Coleman alleges that another employee—a Caucasian female—was not fired when she similarly was caught sleeping on the job. Factual questions remain about whether this other employee was a security guard or in other ways is similarly situated to Coleman. But at this motion-to-dismiss stage, Coleman has sufficiently pled a § 1981 claim. If what Coleman asserts about the other employee is true and he can prove she was merely suspended for the same behavior for which he was fired, he may be able to succeed on his claim. At this point, Coleman must plead only a short and plain statement plausibly alleging employment discrimination.[51] He has. I therefore deny Victoria Partners' request to dismiss Coleman's § 1981 claim.

### Conclusion

Accordingly, IT IS HEREBY ORDERED that Judge Ferenbach's Report and Recommendation **(Doc. 2) is ADOPTED** and Coleman's original complaint **(Doc. 3) is DISMISSED**; Victoria Partners' motion to dismiss **(Doc. 7) is Granted in Part and Denied in Part**; and Coleman's retaliation claim is dismissed, but his racial discrimination claims survive.

DATED July 24, 2015.

Jennifer A. Dorsey
United States District Judge

---

[49] *Lowe v. City of Monrovia*, 775 F.2d 998, 1011 (9th Cir. 1985).

[50] *Id* (quotation omitted).

[51] *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510–11 (2002); *Sheppard v. David Evans & Assoc.*, 694 F.3d 1045, 1050 n.2 (9th Cir. 2012).